THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW FOREST CEMETERY, Plaintiff, *v.* CHRISTIAN BODMER, FRANK ANDES, T. WILLIAM ARTHUR, PHILIP C. HAMMES, as Assessors of the City of Utica, New York, et al., Defendants.

Supreme Court, Oneida County, August 16, 1924.

Taxation — exemptions — certiorari to review assessment of real property of cemetery association — property exempt from taxation under Tax Law, § 4, subd. 7, for payment of city's share of cost of reconstructing and widening street in territory annexed to city — work was commenced in 1915 under Laws of 1912, chap. 88 — reconstruction and widening of street is not "local improvement" within Laws of 1898, chap. 258, and cannot be paid for by special assessment — relator not entitled to costs.

Property of the relator, a cemetery association in the city of Utica, an abutting owner, is exempt, under subdivision 7 of section 4 of the Tax Law, from taxation for payment of the said city's share of the cost of reconstructing and widening a state highway in a territory annexed to the city where the work was commenced in 1915 under the Laws of 1912, chapter 88, since the improvement is not a "local improvement" within chapter 258 of the Laws of 1898, which eliminated the exemption of cemeteries from local taxation, and cannot be paid for by special assessment to which the relator would be subject, but must be paid for by general assessment for which the relator is exempt under the provisions of the Tax Law.

Under the general rule that where a public official acts in good faith to sustain the position of a municipality no costs will be allowed, none are allowed the relator in this proceeding, though he was successful, since the corporation counsel was justified and was doing his duty in defending the proceeding.

CERTIORARI to review acts of assessors of city of Utica in relation to local assessment for highway improvement.

*Charles J. Fuess,* for the relator.

*Clarence E. Williams,* corporation counsel, for the defendants.

40

Martin, Louis M., J.   This proceeding is brought to review the acts of defendants, as assessors of the city of Utica, Oneida county, N. Y., and as members of the common council and other officials of said city of Utica, in relation to local assessment No. 42, made in the year 1918 for the construction of an improvement on Oneida street highway No. 5605, which said assessment, so levied, imposed a tax against relator's property on August 14, 1918, for " local improvement " in the sum of $4,309.48.

Said action and assessment is opposed by relator on the following grounds: (1) That relator's property is exempt from any taxation; (2) that the said board of assessors was without jurisdiction to levy the same; (3) and on the further ground that this highway so improved was a highway of the state of New York, and that the said improvement was not, therefore, a local one, but an improvement for the joint benefit of the city of Utica aforesaid and of the said state, and, therefore, was illegally and unlawfully assessed and levied.

By the stipulations of the several attorneys of the parties interested herein this matter has been delayed, and not until April, 1924, was it brought before the court for determination.

This particular section of the state highway was formerly in the town of New Hartford, Oneida county, N. Y., and in the year 1901 plans for its improvement were approved by the state engineer, and the work therein was progressed as a state function.

In 1904 that portion of the said town of New Hartford, through which this section of said highway extended which was improved, was annexed to the city of Utica, and it was presently determined to widen this particular portion of said street into a public boulevard for the benefit of the said city and an ordinance was passed by its common council accordingly.   The portion of the state road within the city limits, previously constructed, was taken up; the said street widened to thirty-one feet; the former pavement (macadam) removed, and a new one (bitulithic) laid in its place.

The amount paid by the state for this new venture was $6,613.02; and the amount appropriated therefor by the said city was $20,100. This improvement was made under state supervision; was let by contract known as No. 5605; and was accepted by the said city May 22, 1918.   The original cost paid by the state was, as stated, $6,613.02; and the excess cost or expenditure therein of $20,100 was the amount appropriated by the said city for the construction of said boulevard.   Thereafter the board of assessors of said city caused to be made up an assessment against the abutting property owners for this new construction and assessed the tax *pro rata* against them, after deducting the one-third thereof charged against

the said city, as provided by section 99 of its charter (Laws of 1913, chap. 160).

The relator, as one of the abutting property owners, was assessed $4,309.48 and resists the levy of such tax, as heretofore stated, on the following grounds: (a) Relator claims exemption from taxation as a cemetery association under section 4, subdivision 7, of the Tax Law: " The real property of a corporation or association organized exclusively * * * for cemetery purposes * * * shall be exempt from taxation." (b) Also, under section 450 of the Real Property Law, which is a re-enactment of chapter 310 of the Laws of 1879: " No land actually used and occupied for cemetery purposes shall be sold * * * for any tax or assessment, nor shall such tax or assessment be levied, collected or imposed." (c) Relator further claims exemption under its incorporation act (Laws of 1877, chap. 31): " The cemetery lands and property of any association formed pursuant to this act * * * shall be exempt from all public taxes."

The said city of Utica, by section 115b of chapter 258 of the Laws of 1898, attempted to eliminate these exemptions in the matter of taxation for local improvements, using the following language in said statute: " No lands in the city of Utica shall be exempt from the local improvement or local assessment herein provided for or from any other local assessment or local improvement in the charter of said city mentioned or provided for." This clearly repealed the antagonistic provisions of the said state statutory exemptions as to any tax assessed to pay for any local improvement specified and set forth in the charter of said city, or in the act itself, and rendered the property of the relator liable to assessment and taxation for the same. *Gouverneur Village* v. *Gouverneur Cemetery Association*, 136 App. Div. 37; *Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 506; *Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 id. 61.

It must, therefore, be held that relator's property would be liable for the building of sidewalks, cleaning of streets, the paving or repaving of the same, or any other strictly local improvement mentioned in the charter of said city and intended to benefit the particular property assessed.

A provision was made and incorporated in the said city charter for street improvement, and a well defined plan for such procedure was therein set out, viz.: Plans and specifications were to be prepared prior to a proposed ordinance being adopted for such purpose; notice of filing same must be published for three alternate days in the official newspaper of said city; sealed proposals or bids were to be opened by the mayor in the presence of the common

council; a bond was required by the proposer; the common council had the right to then authorize the acceptance of this proposal, unless, at its next meeting, one or more persons liable to be assessed for said work shall propose and tender bonds therefor as aforesaid to do the work at an expense at least fifteen per centum less than the proposal deemed the most favorable, in which case the work shall be let to the person or persons last proposing. City Charter, § 99. The cost of such work is then apportioned, one-third against the city and two-thirds against the abutting property owners.

Thus a plain and reasonable scheme of taxation for local improvements is provided for, and relator was entitled to have this provision strictly complied with before any liability for a tax accrues.

The assessment complained of came up in an entirely different manner. It was, and is, not a local matter at all, but one of state improvement, with city participation; and in order to fully understand the situation, a brief history of state road improvement activities becomes necessary.

The first enactment of the legislature of the state of New York along the line of state aid for highway construction was brought about by chapter 115 of the Laws of 1898. This act provided that on the presentation of a petition by the majority of property owners on any highway to the board of supervisors of any county, the same could be constructed through any township under the supervision of the state, and the cost of the said construction to be paid, viz., fifty per cent by the state, thirty-five per cent by the county, and fifteen per cent by the township.

General construction of improved highways followed throughout the state. It was found, however, that where the highways came in contact with incorporated villages, no provision having been made to extend them through the same, none were therein constructed, owing largely to lack of funds.

By chapter 330 of the Laws of 1908 (Highway Law, § 137) state aid was extended to villages; and by chapter 88 of the Laws of 1911, to cities of the third class, and by chapter 88 of the Laws of 1912, such aid was extended to cities of the second and third class. This extension of aid to cities was opposed by the city of New York in 1916, the said greater city claiming it to be unfair that it should pay a large proportion of the costs of highway construction through the other cities of the state, and consequently the said act was practically repealed, so that the present existing Highway Law, section 137, applies only to villages; section 137a, however, extending some aid to cities adjacent to Greater New York.

But there was the general provision in all these statutes, including

chapter 88 of the Laws of 1912, that if a city or village desired to have a wider street within the corporate limits of said place, or to have the street widened and improved therein, that such street could be so widened and improved at the time by the state, at the request of such city or village, and the expense met as follows: " Upon the proper completion thereof and notification as above provided, the commission [state highway commission] shall certify to the board of trustees, or the common council the cost of such additional construction, and such board or common council shall pay the same out of moneys raised by tax or from the issue and sale of bonds as provided in the village law, if in a village, or by the general or special act governing bond issues and taxation in any such city if in a city of the second or third class." Special provisions of city charters were allowed to stand, as far as the paving and improving of city streets are provided for, " as far as may be."

Thus the law allowed local improvements to be made only for the paving or improving of these streets; and it in no way permitted, or contemplated, that a city could construct a boulevard by widening a street thirty-one feet and making a very expensive construction for the benefit of the entire city and assess the cost thereof against the abutting property owners only — but did provide that the amount of such cost should be raised by tax on the city, or by the issuing of bonds by the city to pay therefor.

In 1915, the city of Utica aforesaid, taking advantage of such statute, took the steps necessary to create this city improvement, and this very activity was one of the reasons why the said law was repealed the next year. The city of New York protested most vigorously against paying a large share towards the construction of a boulevard in Utica, N. Y.

The moment that this application was made by the said city of Utica, it became a joint state and city proposition, not for the benefit of people living adjacent to said Oneida street only, not a " local improvement " for them, but to create a valuable improvement for the benefit of the city at large, constructed and financed by the said city and state.

That this was such paving or repaving, macadamizing or telfordizing a street of the said city as was contemplated by its city charter, cannot be sustained by any stretch of imagination. Certainly it would be far from doing equity to have a court hold that this relator must now pay $4,309.48 and accrued interest and penalties for a local improvement to its property that was in no sense local; but for the benefit of the state and said city in their joint activities in a construction of an improved state highway in and under the general system of such road development.

That this was not contemplated by the legislature is evident when it provided in the said law for payment by either tax or bond issue, and made no further provision for a *pro rata* levy on abutting property.

The method pursued lacks all of the safeguards provided for assessment against the owners of private property for local improvements along this street. Relator had no notice of its initiation, no chance to examine the plans or specifications, no right to examine into the amount to be expended, and the work was not let out on bids proposed or submitted with an opportunity for abutting property owners to bid on the same, as provided for in the said city charter. It was carried on by the state, as a state and city matter, and the amount of expense certified to the city aforesaid for payment; no rights were reserved to this relator; it was simply a levy and demand for the payment of the sum of $4,309.48 as a tax. This is not such a tax for " local improvements " as was contemplated by said chapter 258 of the Laws of 1898, eliminating the exemption of cemeteries from local taxation, but is a general tax on the said city at large; and from such tax relator is exempt.

It, therefore, appears that said tax so levied against the property of relator was, and is, illegal, and that the same must be stricken from the tax roll of said city of Utica, N. Y., including all interest and penalties attached thereto for the non-payment of the same.

The corporation counsel was justified and was doing his duty in defending this proceeding; and following the general rule therein that where a public official acts in good faith to sustain the position of a municipality, no costs are to be allowed, none are, therefore, awarded relator in this proceeding.

Proper findings may be submitted along the lines suggested; and, on the approval and signing of the same, a judgment and order may be entered accordingly.

Judgment accordingly.